# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT ASSOCIATION, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>CROWDSTRIKE HOLDINGS, INC., GEORGE KURTZ, and BURT W. PODBERE,<br><br>     Defendants. | Case No. 1:24-cv-00857-RP<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**<br><br>JURY TRIAL DEMANDED |

**I.      INTRODUCTION**

The Public Employees' Retirement System of Mississippi ("MPERS") respectfully submits this memorandum of law in support of its motion to: (i) appoint it as sole Lead Plaintiff in the above-referenced action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as amended by the PSLRA, 15 U.S.C. § 78u-4, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (ii) approve its selection of Kahn Swick & Foti, LLC ("KSF") as sole Lead Counsel and Kendall Law Group, PLLC as Liaison Counsel for the class. *See Bremer v. Solarwinds Corp.*, 2021 U.S. Dist. LEXIS 124780, *3-6 (W.D. Tex. 2021) (Pitman, J.); *Logan v. Propetro Holding Corp.*, 2019 U.S. Dist. LEXIS 253980, at *8-14 (W.D. Tex. 2019).

**II.     PROCEDURAL BACKGROUND**

The above-captioned action was filed on July 30, 2024, and alleges violations of §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder (the "Action").[1] The Complaint brings claims on behalf of persons and entities that purchased or otherwise acquired CrowdStrike Class A common stock between November 29, 2023 and July 29, 2024, inclusive (the "Class Period"). In addition to CrowdStrike Holdings Inc. ("CrowdStrike" or the "Company"), the Action names as defendants George Kurtz (CrowdStrike's CEO and co-founder) and Burt W. Podbere (CrowdStrike's CFO).

Notice of the Action was published in *Business Wire* on July 31, 2024, informing investors who wished to serve as lead plaintiff that they must move the Court within sixty days of publication (*i.e.*, September 30, 2024). Ex. C.

---

[1] All emphasis added and internal citations are omitted unless otherwise indicated. Capitalized terms have the same meaning as in the Complaint (ECF No. 1), unless otherwise stated.

1

### III. STATEMENT OF FACTS

CrowdStrike, headquartered in Austin, Texas, is a global cybersecurity company that provides software that helps prevent data breaches. Compl. ¶ 21. CrowdStrike's common stock trades on the NASDAQ under the symbol "CRWD." *Id.* at ¶ 14. CrowdStrike's customers are major corporations across several industries including airlines, banks, hospitals, and telecommunications providers as well as government entities. *Id.* at ¶ 21. CrowdStrike's main product is the Falcon software platform, which purportedly uses artificial intelligence and machine learning technologies to detect, prevent, and respond to security breach threats. *Id.* at ¶ 22. CrowdStrike claims that the key to the Company's technological and business advantages is that Falcon can keep pace with cybersecurity threats through rapid innovation and constant software updates. *Id.*

The Class Period begins on November 29, 2023, the day after CrowdStrike announced its financial results for the third quarter of fiscal year 2024.[2] *Id.* at ¶ 24. In connection with the release of these results, Defendants participated in a related earnings call with analysts and investors. *Id.* On that call, Defendant Kurtz touted Falcon, claiming it "has made cybersecurity easy and effective for small businesses to the world's largest enterprises" and the "new Falcon Data Protection module that liberates customers from legacy [data loss prevention] products with modern, frictionless data security." *Id.*

That same day, the Company filed its Quarterly Report with the SEC for the third quarter of 2024 (the "2024 Q3 Report"). *Id.* at ¶ 25. The 2024 Q3 Report identified risk factors to the Company's business, including: "If our solutions fail or are perceived to fail to detect or prevent incidents or have or are perceived to have defects, errors, or vulnerabilities, our brand and

---

[2]   CrowdStrike's fiscal year ends on January 31.

reputation would be harmed, which would adversely affect our business and results of operations." *Id.* at ¶ 26. Notably, the following factors were identified as having the potential to affect the delivery, availability, and performance of the Falcon platform: (i) "errors, defects or performance problems in our software, including third-party software incorporated in our software;" (ii) "improper deployment or configuration of our solutions;" (iii) "the failure of our redundancy systems, in the event of a service disruption at one of our data centers, to provide failover to other data centers in our data center network;" and (iv) "the failure of our disaster recovery and business continuity arrangements." *Id.*

On March 5, 2024, CrowdStrike announced its financial results for its fiscal year 2024. *Id.* at ¶ 28. As part of these results, Defendants participated in an earnings call the same day during which Defendant Kurtz touted Falcon, claiming it "is validated, tested and certified." *Id.* He also highlighted CrowdStrike's "execution and discipline across the business." *Id.* The Company filed its Annual Report with the SEC on Form 10-K for fiscal year 2024 on March 7, 2024. *Id.* at ¶ 29. The Annual Report promoted Falcon's efficacy and continual enhancement claiming, "We also maintain a regular release process to update and enhance our existing solutions. In addition, we engage security consulting firms to perform periodic vulnerability analysis of our solutions." *Id.* at ¶ 30. The Company repeated many of the risk statements found in the 2024 Q3 Report including that (i) CrowdStrike's reputation and business would be harmed if its solutions were perceived to have defects or errors; and (ii) the list of factors which could affect the delivery, availability, and performance of the Falcon platform. *Id.* at ¶ 31. Also on March 7, 2024, Defendant Kurtz spoke at the Morgan Stanley Technology, Media & Telecom Conference and claimed it was "friction-free to deploy [CrowdStrike's product]." *Id.* at ¶ 33. CrowdStrike filed its Quarterly Report for the first

3

quarter of 2025 on June 5, 2024, wherein the Company repeated the same risk statements as found in the Annual Report and 2024 Q3 Report. *Id.* at ¶¶ 34-35.

The truth about CrowdStrike's deficient process for updating its Falcon software was revealed to investors in a series of partial disclosures. On July 19, 2024, CrowdStrike deployed a flawed Falcon content update which caused major worldwide technology outages on about 8.5 million devices running Microsoft Windows (the "CrowdStrike Outage" or the "Outage"). *Id.* at ¶ 38. Victims of the CrowdStrike Outage included both large corporations and government entities; airlines were forced to ground countless flights and emergency 911 hotlines were inoperable. *Id.* The Outage subjected the Company to substantial legal liability and massive reputational damages. *Id.* On this news, shares of CrowdStrike fell $38.09, or 11%, to close at $304.96. *Id.*

On July 22, 2024, Congress called on Defendant Kurtz to testify regarding the crisis and the Company's stock rating was downgraded by analysts such as Guggenheim and BTIG. *Id.* at ¶ 39. On this news, shares of CrowdStrike fell $41.05, or 13.5%, to close at $263.91. *Id.*

Due to the Outage, Delta Air Lines experienced an operational meltdown that forced the airline to cancel over 7,000 flights. On July 29, 2024, news outlets reported that the airline had hired prominent attorney David Boies to seek damages from CrowdStrike. *Id.* at ¶ 40. On this news, shares of CrowdStrike fell $25.16, or 10%, to close at $233.65 on July 30, 2024. *Id.*

Since the CrowdStrike Outage, publicly revealed evidence indicates that CrowdStrike was taking insufficient precautions regarding such updates. *Id.* at ¶ 41. For instance, CrowdStrike has since promised to take remedial measures to ensure that such a crash does not happen again, including implementing so-called canary deployment of such updates, meaning a progressive rollout that starts with a subset of users. *Id.* If such changes are necessary and were previously available, this indicates CrowdStrike was not taking such precautions prior to the Outage. *Id.*

4

Expert commentary also provided evidence of CrowdStrike's poor testing procedures. *Id.* at ¶ 42. For instance, *The Verge* noted that CrowdStrike appears not to do as much testing on its content updates as it does elsewhere. An expert quoted by *The Verge* stated that "[i]f CrowdStrike had properly tested its content updates," the CrowdStrike Outage would likely not have occurred. *Id.* at ¶ 42. Similarly, a cybersecurity expert cited by *Forbes* criticized CrowdStrike's quality assurance procedures and stated that "there's no absolving CrowdStrike from responsibility of this incident." *Id.* at ¶ 43. An expert cited by *The Washington Post* said it was "alarming" that the CrowdStrike update was not "tested and validated" before it was implemented. *Id.* at ¶ 43.

On September 24, 2024, Adam Meyers, CrowdStrike Senior Vice President for Counter Adversary Operations, appeared before the House of Representatives Cybersecurity and Infrastructure Protection subcommittee and apologized for the CrowdStrike Outage. Meyers said that CrowdStrike takes "full responsibility" for the Outage.[3]

## IV.   ARGUMENT

### A.   MPERS Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure to appoint a lead plaintiff in a securities fraud class action. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, the plaintiff who files the initial action must publish a notice within 20 days of filing the action advising the class of their right to file a motion for appointment as lead plaintiff. *See Id.* § 78u-4(a)(3)(A)(i). Next, within 60 days of publication, members of the proposed class are entitled to seek appointment as lead plaintiff. *Id.* § 78u-4(a)(3)(A)-(B). The Court then appoints as lead plaintiff the member of the class that is determined

---

[3]   Joseph Menn, *Congress Grills CrowdStrike About Multibillion-Dollar July Outage*, THE WASHINGTON POST (Sept. 24, 2024 6:15 PM), https://www.washingtonpost.com/technology/2024/09/24/congress-grills-crowdstrike-about-multibillion-dollar-july-outage/.

5

to be "most capable" of adequately representing the interest of class members. *Id.* § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> (i) [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
>     (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
>     (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>     (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii). Once the presumption attaches, it can only be overcome upon a showing of proof that the presumptive lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses that will render the presumptive lead plaintiff incapable of doing so. *See id.* § 78u-4(a)(3)(B)(iii)(II).

    **1.**    **MPERS's Motion is Timely**

The first-filed plaintiff published notice pursuant to the PSLRA on July 31, 2024 *via Business Wire*. *See* Ex. C. *Business Wire* is a widely circulated national business-oriented wire service which courts in this Circuit have found to satisfy the PSLRA's statutory notice requirements. *See Logan*, 2019 U.S. Dist. LEXIS 253980, at *9 (accepting without question publication via Business Wire as satisfactory); *Tran v. XBiotech Inc.*, 2016 U.S. Dist. LEXIS 22279, at *3 (W.D. Tex. 2016) (same). MPERS has filed its motion within 60 days of the notice and is therefore timely.[4]

---

[4] A named institutional plaintiff represented by Robbins Geller Rudman & Dowd, LLP may serve in a representative capacity on an amended complaint in the event MPERS is appointed lead plaintiff. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004) ("the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class").

### 2. MPERS Possesses the Largest Financial Interest in the Relief Sought by the Class

Using criteria courts have developed to assess financial interest, MPERS believes it has the largest financial interest in the relief sought by the putative class—a loss of approximately $4.1 million in connection with the 72,457 shares of CrowdStrike common stock it retained through the end of the Class Period. *See* Ex. B; *Bremer*, 2021 U.S. Dist. LEXIS 124780, at *5; *Giovagnoli v. Globalscape, Inc.*, 2017 U.S. Dist. LEXIS 232558, at *7-8 (W.D. Tex. 2017) ("Courts consistently consider the fourth factor—the approximate losses suffered—as most determinative to identify the plaintiff with the largest financial loss.").

### 3. MPERS Satisfies Rule 23's Requirements

In addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of lead plaintiffs, Rule 23(a) generally requires that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* FED. R. CIV. P. 23. As detailed below, MPERS satisfies these requirements.

The typicality requirement of Rule 23(a)(3) is satisfied if the representative plaintiff's claims "arise from the same course of events, and their legal arguments to prove Defendants' liability are virtually identical." *See Bremer*, 2021 U.S. Dist. LEXIS 124780, at *5. MPERS's claims are typical of those of other putative class members. *Id.* at *5-6. Like other putative class members, MPERS: (i) purchased or otherwise acquired CrowdStrike Class A securities during the class period; (ii) did so in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (iii) suffered damages from purchasing artificially inflated securities and then suffered harm when the truth was revealed. *See* Exs. A & B.

7

A representative party must also "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Logan*, 2019 U.S. Dist. LEXIS 253980, at *8. Here, MPERS's interests are clearly aligned with the members of the class and there is no antagonism between its interests and those of other class members. Further, as a sophisticated institutional investor, MPERS is a paradigmatic lead plaintiff under the PSLRA, and its appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."[5] H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in U.S.C.C.A.N. 730, 733.

For this reason, courts in the Fifth Circuit and this District strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g., Bremer,* 2021 U.S. Dist. LEXIS 124780, at *6 ("Congress intended for institutional investors 'to step forward to lead securities class actions'") (quoting *Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275, 281 (N.D. Tex. 2001)); *Strong v. Athrocare Corp.*, 2008 U.S. Dist. LEXIS 145799, at *29 (W.D. Tex. 2008) (granting an institutional investor's motion for lead plaintiff and stating that it was "a large institutional investor of the kind **perfectly suited** to be a lead plaintiff in a PSLRA action"); *Bender v. Vertex Energy, Inc.*, 2024 U.S. Dist. LEXIS 20896, at *27 (S.D. Tex. 2024) ("Congress believed that institutional investors, sophisticated investors with significant losses at stake, would carefully select and monitor plaintiffs' lawyers to the benefit of the class of aggrieved shareholders, in contrast to individual lead plaintiffs with meager shareholdings and little leverage over their counsel.") (quotations omitted).

---

[5] Established in 1952, MPERS is a retirement system for the non-federal public employees with investment assets of approximately $33 billion. Moreover, MPERS has considerable securities litigation experience, including successfully serving as the court-appointed PSLRA lead plaintiff in prior securities fraud class action lawsuits.

### B.     This Court Should Approve MPERS's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, MPERS has selected KSF as Lead Counsel for the class following its own independent assessment of the firm's qualifications. *See* Ex. D. KSF is a national law firm with presences in Louisiana, Illinois California, Delaware and New York—courts have repeatedly found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See* Ex. D; *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case."); *see also Welch v. Meaux*, 2020 U.S. Dist. LEXIS 148270, at *20 (W.D. La. 2020) (appointing KSF lead counsel); *Dougherty v. Esperion Therapeutics*, 2020 U.S. Dist. LEXIS 216515, at *22-23 (E.D. Mich. 2020) (approving KSF as co-class counsel); *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608, at *42-43 (M.D. Tenn. 2017) (same).

KSF also prevailed on behalf of the court-appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom.* 139 S. Ct. 2615 (2019), which significantly altered the federal securities pleading requirements in the Ninth Circuit. *See* Ex. D. Further, KSF served as counsel to the lead plaintiff in the Halliburton securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 134 S. Ct. 2398 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179 (2011).

9

More recently, KSF obtained a $165 million recovery for Blackberry investors, following nearly nine years of determined litigation including a successful appeal, *see Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *26-27 (S.D.N.Y. 2022), and preliminary approval for a $189 million proposed settlement in *Dicker v. TuSimple Holdings, Inc.*, Case No. 3:22-cv-01300-BEN-MSB (S.D. Cal. Sep. 5, 2024) alongside Robbins Geller Rudman & Dowd, LLP.  Thus, the Court may be assured that by granting this Motion, the members of the class will receive the highest caliber legal representation available from KSF. *See* Ex. D.

## V.  CONCLUSION

For the foregoing reasons, MPERS respectfully requests that the Court: (i) appoint it as sole Lead Plaintiff; and (ii) approve its selection of KSF as sole Lead Counsel and Kendall Law Group, PLLC as Liaison Counsel for the class.

Dated: September 30, 2024

Respectfully submitted,

**KENDALL LAW GROUP, PLLC**

By: ___*/s/ Joe Kendall*___
Joe Kendall
Texas Bar No. 11260700
Kendall Law Group, PLLC
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Telephone: (214) 744-3000
Fax: (214) 744-3015
jkendall@kendalllawgroup.com

*Proposed Liaison Counsel*

**KAHN SWICK & FOTI, LLP**
Ramzi Abadou
(to be admitted *pro hac vice*)
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexandra Pratt
(to be admitted *pro hac vice*)
James T. Fetter
(to be admitted *pro hac vice*)
1100 Poydras Street, Suite 960
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexandra.pratt@ksfcounsel.com
james.fetter@ksfcounsel.com

*Proposed Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Joe Kendall*
Joe Kendall