**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| *IN RE CROWDSTRIKE HOLDINGS, INC.*<br>*SECURITIES LITIGATION* | Case No. 1:24-cv-00857-RP<br><br>**CLASS ACTION** |

**LEAD PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE OR**
**INCORPORATION-BY-REFERENCE**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................................................1

II.   LEGAL STANDARD ........................................................................................................2

III.  ARGUMENT .....................................................................................................................4

     A.    Exhibits D, E, H, L, And M Are Extrinsic Evidence Not Referenced In
         The Complaint That Should Not Considered............................................................ 5

     B.    Exhibits A, B, And Q, Are Self-Serving Post-Class Period Statements
         That Should Not Be Considered For Their Truth ...................................................... 9

     C.    Exhibits C, F, G, I-K, N-S, T-Y And AA Can Be Considered For Whether
         They Contain The Alleged Misstatements, But Not For Defendants'
         Improper Purpose .................................................................................................... 12

IV.  CONCLUSION................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ambler v. Williamson Cnty., Texas*,
2021 WL 769667 (W.D. Tex. Feb. 25, 2021) .............................................................................3

*Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*,
2025 WL 888560 (W.D. Tex. Mar. 13, 2025) ............................................................................6

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ..............................................................................2, 3, 7

*Brooks v. United Dev. Funding III, L.P.*,
2020 WL 6132230 (N.D. Tex. Apr. 15, 2020) .......................................................................6, 8

*Dorsey v. Portfolio Equities, Inc.*,
540 F.3d 333 (5th Cir. 2008) ....................................................................................................4

*Eastman v. Apple, Inc.*,
2019 WL 3934805 (N.D. Cal. Aug. 20, 2019) ..........................................................................9

*In re Energy Recovery Inc. Sec. Litig.*,
2016 WL 324150 (N.D. Cal. Jan. 27, 2016) ...........................................................................11

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
53 F. Supp. 3d 882 (E.D. La. 2014) ........................................................................................13

*Hanmi Fin. Corp. v. SWNB Bancorp, Inc.*,
2019 WL 937195 (S.D. Tex. Feb. 26, 2019) .............................................................................5

*Hendrickson v. Setty-O'Connor*,
2024 WL 5171621 (N.D. Tex. Nov. 12, 2024) ..........................................................................4

*Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp. & Lear Mexican Seating Corp.*,
2016 WL 7410771 (W.D. Tex. Dec. 21, 2016) .........................................................................5

*Kader v. Sarepta Therapeutics, Inc.*,
2016 WL 1337256 (D. Mass. Apr. 5, 2016) .............................................................................9

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
453 B.R. 645 (N.D. Tex. 2011) .................................................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ......................................................................................... *passim*

*Kurtzman v. Compaq Comput. Corp.*,
  2000 WL 34292632 (S.D. Tex. Dec. 12, 2000) ........................................................................12

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) .............................................................................................3, 9, 17

*In re Lumen Techs., Inc., Sec. Litig.*,
  2024 WL 4637293 (W.D. La. Sept. 30, 2024) .........................................................................6, 7

*Maiman v. Talbott*,
  2010 WL 11421950 (C.D. Cal. Aug. 9, 2010) ............................................................................14

*In re Michaels Stores, Inc. Sec. Litig.*,
  2004 WL 7344746 (N.D. Tex. Dec. 13, 2004) ................................................................. *passim*

*Ochoa v. Bradfute Enters., LLC*,
  2025 WL 841752 (W.D. Tex. Mar. 11, 2025) .................................................................. *passim*

*Palomo v. Action Staffing Sols., Inc.*,
  2022 WL 2392646 (W.D. Tex. July 1, 2022) ..............................................................................5

*Payne v. City of Houston, Texas*,
  2025 WL 999085 (5th Cir. Apr. 3, 2025) ...............................................................................4, 5

*Roe v. East Baton Rouge Parish School Bd.*,
  2024 WL 4447229 (M.D. La. Oct. 8, 2024) ..............................................................................14

*Schneider v. Natera, Inc.*,
  2023 WL 9958265 (W.D. Tex. Sept. 11, 2023) ...........................................................................2

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ............................................................................16

*In re SolarWinds Corp. Sec. Litig.*,
  595 F. Supp. 3d 573 (W.D. Tex. 2022) ............................................................................ *passim*

*Stone v. Life Partners Holdings, Inc.*,
  26 F. Supp. 3d 575 (W.D. Tex. 2014) .............................................................................3, 5, 7, 9

*Taylor v. Charter Med. Corp.*,
  162 F.3d 827 (5th Cir. 1998) ...................................................................................................3

**RULES, STATUTES, & OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................2

Fed. R. Evid. 201 .......................................................................................................................3

## I.    **INTRODUCTION**

Defendants make the conclusory statement in a footnote of their Motion to Dismiss that the 28 exhibits they attach and rely on throughout their motion are "subject to judicial notice, are incorporated by reference in the Complaint, or both." MTD at 4 n.2.[1] Defendants do not distinguish which documents fall into which category, nor do they explain the basis on which the Court should consider those documents. Even if the Court could consider these extrinsic documents for any purpose, Defendants make no effort to explain why the Court should accept the alternate set of facts Defendants pieced together from snippets of these documents. Defendants' attempt to misuse the judicial notice and incorporation-by-reference doctrines to discredit Plaintiff's well-pled allegations is improper and should be rejected. In any event, as a factual matter, Defendants misstate these extrinsic documents, which do not undermine Plaintiff's allegations.

While information in certain of these exhibits could be considered for the limited purposes of providing context of alleged false statements, Defendants incorrectly urge the Court to do much more. Specifically, Defendants use a patchwork of snippets lifted from these exhibits to construct a competing—and incorrect—factual narrative of (i) how investors supposedly would have understood the alleged misstatements; and (ii) the underlying factual bases for the falsity of those statements.

Defendants' attempt to misuse extrinsic documents is a perfect example of what the Ninth Circuit denounced in *Khoja v. Orexigen Therapeutics, Inc*. There, the Ninth Circuit forcefully criticized the "concerning pattern" of defendants in securities class actions misusing "judicial notice" and "incorporation-by-reference" to improperly present a skewed version of the "facts" at

---

[1] References to "MTD" refer to Defendants' Motion to Dismiss, ECF No. 47; ¶_ refers to the Consolidated Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 41. Unless otherwise indicated, all emphasis is added, and all internal citations and quotation marks are omitted.

the pleading stage. 899 F.3d 988, 998 (9th Cir. 2018). Defendants here have succumbed to the exact "alluring temptation" the Ninth Circuit and courts across the country have cautioned against. Their "unscrupulous use of extrinsic documents to resolve competing theories against the complaint" is improper and cannot be credited. *Id.*; *see also Ochoa v. Bradfute Enters., LLC*, 2025 WL 841752, at \*11 (W.D. Tex. Mar. 11, 2025) (favorably citing *Khoja* and declining to consider factual disputes raised in document incorporated-by-reference); *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 578 n.1 (W.D. Tex. 2022) (Pitman, J.) (rejecting request to consider extrinsic documents that "include assertions that compete with Plaintiffs' allegations").

Still, as a factual matter, the alleged "context" that Defendants improperly attempt to insert into Plaintiff's allegations, as well as the myriad factual assertions Defendants lift from these extrinsic documents, roundly support Plaintiff's allegations. Even a cursory review of these sources reveals that Defendants mischaracterize their own extrinsic exhibits in an attempt to fit their counter-factual narrative. When viewed without Defendants' distortive lens, Plaintiff's allegations remain entirely intact, even if their improperly injected factual narrative were considered.

As set forth below, Defendants' misuse of the judicial notice and incorporation-by-reference doctrines to construct an alternate set of "facts" is improper.

## II.    <u>LEGAL STANDARD</u>

"In analyzing a motion to dismiss for failure to state a claim, the court accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Schneider v. Natera, Inc.*, 2023 WL 9958265, at \*3 (W.D. Tex. Sept. 11, 2023). When reviewing a Rule 12(b)(6) motion to dismiss, "a court must limit itself to the contents of the pleadings." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 745 (S.D. Tex. 2012).

There are two narrow exceptions to this rule: judicial notice and the incorporation-by-reference doctrine. *Ochoa*, 2025 WL 841752, at \*11 (citing *Khoja*, 899 F.3d at 1014-15). But courts have specifically cautioned against an overly broad utilization of these narrow exceptions, especially in securities fraud class actions:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. ***Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery***.

*Khoja*, 899 F.3d at 998 ; *see also BP*, 843 F. Supp. 2d at 765 n.19 (declining to take judicial notice of document creating factual dispute because "the [c]ourt is bound to accept as true" plaintiffs' allegations).

**Judicial Notice**. Under Federal Rule of Evidence 201, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either (1) generally known within the territorial jurisdiction, or (2) capable of accurate determination by resort to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830-31 (5th Cir. 1998). "[T]he Court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 603 (W.D. Tex. 2014) (quoting Fed. R. Evid. 201(b)). The court's notice is further limited to the existence of the document, "not to prove the truth of the documents' contents." *Id.* (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)). "The power to take judicial notice must be exercised by courts with caution," and "[e]very reasonable doubt upon the subject should be resolved promptly in the negative." *Ambler v. Williamson Cnty., Texas*, 2021 WL 769667, at \*3 (W.D. Tex. Feb. 25, 2021).

**Incorporation by Reference**. "A court is permitted ... to rely on documents incorporated into the complaint by reference." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). But "for a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss, (2) be referred to in the plaintiff's complaint, and (3) be central to the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "For a document to be 'central' to a plaintiff's claims … it must be evidence the plaintiff substantially relies on to prove their claims." *Payne v. City of Houston, Texas*, 2025 WL 999085, at *2 (5th Cir. Apr. 3, 2025). But "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint," *Kaye*, 453 B.R. at 662, and "documents used to support a defendant's affirmative defense appear not to fall within the exception." *Hendrickson v. Setty-O'Connor*, 2024 WL 5171621, at *4 (N.D. Tex. Nov. 12, 2024).

Importantly, even when incorporation by reference applies, a defendant may not use the contents of the document to try to "disprove the Complaint's factual allegations." *In re Michaels Stores, Inc. Sec. Litig.*, 2004 WL 7344746, at *3 (N.D. Tex. Dec. 13, 2004). Indeed, "[t]he incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Ochoa*, 2025 WL 841752, at *11.

## III.    ARGUMENT

Defendants ask the Court to exceed the narrow exceptions to the rule against consideration of facts outside the Complaint. To that end, they cite extensively from their 28 exhibits, spanning over 750 pages, to spin together a flawed, alternate version of the "facts" and then claim that the Court cannot accept the Complaint's well-pleaded allegations because they are contradicted by Defendants' preferred narrative. Defendants' approach is improper.

As an initial matter, Defendants did not sufficiently state the basis for such relief. A party who requests a court adopt "facts" and consider extraneous documents—let alone from 28 of them—must make the requisite showing for each exhibit and fact. Defendants have failed to make that showing here. *See Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp. & Lear Mexican Seating Corp.*, 2016 WL 7410771, at *6 (W.D. Tex. Dec. 21, 2016) ("The lack of analysis by Defendants leaves the Court assuming [underlying facts] and, based on that decision, whether the doctrine of incorporation by reference" applies); *Hanmi Fin. Corp. v. SWNB Bancorp, Inc.*, 2019 WL 937195, at *4 n.7 (S.D. Tex. Feb. 26, 2019) (denying request for judicial notice where defendant failed to "convincingly argue that the 'accuracy' of SEC filings and press reports 'cannot reasonably be questioned'").

In any event, as discussed further below, Defendants misuse the judicial notice and incorporation by reference doctrines.

A. **Exhibits D, E, H, L, And M Are Extrinsic Evidence Not Referenced In The Complaint That Should Not Considered**

Defendants urge the Court to consider and adopt their interpretation of documents that are neither cited nor referenced anywhere in the Complaint, including two excerpts from government websites (Exs. D and E), a data sheet published on CrowdStrike's website (Ex. H), and two articles published on CrowdStrike's website (Exs. L and M). Because none of these exhibits is attached to, relied on, or cited in the Complaint, or is otherwise "central" to Plaintiff's claims, they are not incorporated by reference. *See Payne*, 2025 WL 999085, at *2; *Palomo v. Action Staffing Sols., Inc.*, 2022 WL 2392646, at *2 (W.D. Tex. July 1, 2022) (exhibits "cannot be considered part of the pleadings" if plaintiff "does not refer to them in her complaint").

Thus, at most, they can be used to demonstrate the information available to the public at the time, and not for the truth of the assertions contained therein. *Life Partners Holdings*, 26 F.

5

Supp. 3d at 603. Indeed, courts in the Fifth Circuit have applied this rule for every type of document for which Defendants seek judicial notice. *See, e.g.*, *Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*, 2025 WL 888560, at *3 (W.D. Tex. Mar. 13, 2025) (Pitman, J.) (declining to take judicial notice of printout of website because it would not be consistent with the "sparing" use of judicial notice that is appropriate at the motion to dismiss stage); *Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132230, at *33-34 (N.D. Tex. Apr. 15, 2020) (rejecting request for judicial notice of website that defendants argued provided "important context" to alleged misrepresentations in state law securities action, explaining that the documents cannot be used "to make factual findings in an attempt to test the reasonableness of [p]laintiffs' allegations in the Amended Complaint or inferences to be drawn from the allegations"); *In re Lumen Techs., Inc., Sec. Litig.*, 2024 WL 4637293, at *19 (W.D. La. Sept. 30, 2024) ("[W]hile the existence of information posted on a government website may be subject to judicial notice, the veracity of potentially disputed facts contained therein is not.").

As explained in further detail below, Defendants' request for judicial notice of these extraneous documents nowhere cited in the Complaint should be denied or, at minimum, limited.

**Exhibits D and E** are excerpts from the Federal Risk and Authorization Management Program ("FedRAMP") and Department of Defense ("DoD") websites. Defendants improperly request that the Court take notice of Exhibits D and E to show that "CrowdStrike is authorized by both FedRAMP and DoD." MTD at 7, 22 (relying on Exs. D and E).

As set forth in the Complaint, Plaintiff alleges that Defendants misled investors by representing that CrowdStrike was "***meeting the stringent requirements***" of FedRAMP and the DoD when, in truth, CrowdStrike did not comply with either set of requirements because it failed to, among other things, conduct very basic testing of its Falcon updates. ¶¶51-56. According to

6

Defendants, Exhibits D and E disprove Plaintiff's allegations because they show that CrowdStrike's Falcon platform was "authorized" by FedRAMP and the DoD, which they claim render their statements true. MTD at 22 (citing Exs. D and E). But they do no such thing. The Complaint does *not* allege that CrowdStrike falsely represented to investors that the Company held FedRAMP and DoD authorizations. *Id.* Rather, it alleges that CrowdStrike misled investors by stating that it was "***meeting***" the requirements of the FedRAMP and DoD authorizations it held. ¶¶141-44.

Even so, these documents cannot properly be judicially noticed. Defendants' sole use of these documents is to create a factual dispute, which is impermissible. *Michaels Stores*, 2004 WL 7344746, at *3 (rejecting the use of extrinsic documents to "disprove the Complaint's factual allegations"); *SolarWinds*, 595 F. Supp. 3d at 578 n.1 (declining to judicially notice "assertions that compete with [p]laintiffs' allegations").

Defendants mistakenly attempt to bolster the credibility of this gambit by noting obliquely that the documents are from "the federal government's own website." MTD at 7. But whether an extrinsic statement relates to a governmental body does not override the rule that judicially noticed documents cannot be used to dispute allegations. *See, e.g.*, *BP*, 843 F. Supp. 2d at 765 n.19 (declining to take judicial notice of U.S. Dept. of Interior report that introduces "factual disputes"); *Life Partners Holdings*, 26 F. Supp. 3d at 604 (declining to consider the contents of Texas Department of Insurance reports).

**Exhibit H** is an excerpt, nowhere referenced in the Complaint, from CrowdStrike's website that mentions "Falcon Forensics." Defendants improperly request that the Court take judicial notice of Exhibit H to show that FE 1's role purportedly did not relate to quality assurance and thus his allegations should not be credited. MTD at 11-12 (relying on Ex. H). But the Complaint

7

does not allege that FE 1 worked on "Falcon Forensics," nor does it mention "Falcon Forensics" at all. Rather, it alleges that FE 1 was a Senior Technical Operations Engineer on the forensics team and was "responsible for testing of the forensic system for Falcon." ¶62 & n.67. Defendants may not use Exhibit H to challenge the credibility of FE 1's allegations. *See Brooks*, 2020 WL 6132230, at *34 (declining to take judicial notice of website to "challenge the legitimacy of [p]laintiffs' case" at motion to dismiss stage).

**Exhibits L and M** are articles, nowhere referenced in the Complaint, that were published on CrowdStrike's website concerning "Cloud Security Posture Management" and "Cloud Workload Protection." Defendants improperly request that the Court take notice of Exhibits L and M to disprove several of Plaintiff's allegations.

As set forth in the Complaint, Plaintiff alleges that Defendants misled investors during the Class Period by touting the thoroughness of CrowdStrike's testing protocols for its Falcon updates, leading investors to believe that CrowdStrike ensured that "***code is secure, that it's deployed and that it's run in a secure environment***" and that it could "***understand if insecure code is being put into the CICD pipeline***," when, in reality, CrowdStrike did not test updates to Falcon according to basic, industry-standard testing protocols, including testing updates in a pre-production environment. ¶¶124-26.

Defendants erroneously attempt to rely on Exhibits L and M to put Kurtz's statements in "context" and suggest that these statements were not false or misleading because these exhibits supposedly demonstrate statements were "about how customers use Falcon Cloud Security to secure their cloud environments" and "do not represent anything" about CrowdStrike's process for testing and rolling out Rapid Response updates. *See* MTD at 14 (relying on Exs. L and M).

But Exhibits L and M do not provide any "context" that supports Defendants' arguments. Indeed, the transcripts of the investor calls at issue show that neither Defendant Kurtz nor anyone else on the investor calls remotely directed, or in any way referred, to these two extrinsic articles that Defendants claim would have clarified his statements. In any event, Defendants' counter-factual narrative—namely, that Defendants purportedly disclosed that Defendant Kurtz's statements did not at all pertain to the update procedures for Falcon, and so his statements could not be misleading—is based on these extrinsic documents. *See* MTD at 14 (relying on Exs. L and M). Defendants cannot, as they do here, use judicial notice to invite the Court to "resolve competing theories against the complaint," which "risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998-1000 (judicial notice is inappropriate where the substance of a document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes"); *see also Kader v. Sarepta Therapeutics, Inc.*, 2016 WL 1337256, at *10 (D. Mass. Apr. 5, 2016) ("Although these exhibits may have provided helpful [background] context, they are not properly before the Court, nor are they essential to evaluating the sufficiency of the Complaint."); *Eastman v. Apple, Inc.*, 2019 WL 3934805, at *5 (N.D. Cal. Aug. 20, 2019) ("whether the document[] actually disclosed" what is alleged to have been omitted is a dispute "that the Court cannot resolve via judicial notice" at the pleading stage).

## B. Exhibits A, B, And Q, Are Self-Serving Post-Class Period Statements That Should Not Be Considered For Their Truth

The Fifth Circuit has carefully delineated the limits of the incorporation-by-reference doctrine, explaining that "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace*, 78 F.3d at 1018; *Life Partners Holdings*, 26 F. Supp. 3d at 602-04 (declining to consider contents of Texas Department of Insurance reports referenced in complaint). "The

9

incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Ochoa*, 2025 WL 841752, at *11 (quoting *Khoja,* 899 F.3d at 1014 (collecting cases)).

Despite this rule, Defendants improperly cite portions of these exhibits referenced in the Complaint for the "truth" of their contents.

**Exhibit A** is CrowdStrike's "Root Cause Analysis" of the July 19 outage. **Exhibit B** is a blog post providing CrowdStrike's "Preliminary Post Incident Review" of the outage. **Exhibit Q** is a transcript of Adam Meyers's testimony before a congressional committee concerning the outage. Plaintiff does not dispute that it references each of these exhibits in its Complaint. However, to the extent facts alleged in the Complaint are set out in these exhibits, those facts (and only those facts) may be considered for their "truth."

Defendants mistakenly demand that the Court assume other "truths" from the contents of these self-serving documents created after the IT Outage—including that Rapid Response updates are supposedly "configuration data," "not software or code," and that CrowdStrike "did test" its updates. *See* MTD at 4-5, 16-17 (citing Exs. A, B, and Q). But as courts have repeatedly held, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003; *Michaels Stores*, 2004 WL 7344746, at *3; *SolarWinds*, 595 F. Supp. 3d at 578 n.1.

*First*, Defendants point to several self-serving assertions in these documents—distinct from the allegations in the Complaint that reference these documents—to assert that Plaintiff "cannot prove that any of [the update testing] statements were false." MTD at 17. Specifically, Plaintiff alleged that Defendants misled investors by stating that CrowdStrike "***test[ed] more than anyone else***" and "***maintain[ed] a regular release process to update***" its software, and that this

10

process included conducting "***canary deployments of new services before rolling out changes to the entire fleet***." ¶¶120, 122, 134, 139. Defendants point to Exhibits A, B, and Q to assert ***as supposed facts*** that testing for software updates and content updates are different "processes," and that CrowdStrike did in fact employ update testing and phased rollouts for software updates. MTD at 16-17. Defendants then use these exhibits to argue that their statements were not misleading because they cannot have been understood to be referring to content updates. *Id.*

But Defendants cannot use the incorporation by reference doctrine to dispute Plaintiff's allegations. The Complaint is replete with allegations that the alleged misstatements created a misleading impression that updates to the Falcon software were uniformly tested in a pre-production environment and then rolled out in a phased deployment. The Complaint also alleges that the July 19 IT outage was caused by a software update—which is supported by both Defendant Kurtz's own admission when he announced on national television that the outage was caused by "***a software bug***," (¶78), and an industry expert's reaction that the outage resulted from "issues related to a ***software update***." *See, e.g.*, ¶87. Defendants may not spin a counter-factual narrative out of self-serving statements from documents incorporated by reference to invalidate these allegations. *Khoja*, 899 F.3d at 1003; *Michaels Stores*, 2004 WL 7344746, at *3; *SolarWinds*, 595 F. Supp. 3d at 578 n.1.

***Second***, leaving aside Defendants' impermissible use of Exhibits A, B, and Q, once again, these exhibits do not provide the missing "context" Defendants say they do. Each of these exhibits post-dates the Class Period. *See* Ex. A (dated Aug. 6, 2024); Ex. B (dated July 24, 2024); Ex. Q (dated Sept. 24, 2024). Disclosures that occur after the class period do not demonstrate what information was available to investors ***at the time*** of the alleged misstatements. *See, e.g.*, *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *3 (N.D. Cal. Jan. 27, 2016) (noting that

11

though it may be appropriate to consider "the existence" of certain publicly available documents and their contents, it is not appropriate when "they post-date the events at issue and cannot establish whether the market knew" during the class period); *see also Kurtzman v. Compaq Comput. Corp.*, 2000 WL 34292632, at *25 (S.D. Tex. Dec. 12, 2000) (declining to consider documents that defendants argued contained disclosures "because they occurred outside of the Class Period").

**C.      Exhibits C, F, G, I-K, N-S, T-Y And AA Can Be Considered For Whether They Contain The Alleged Misstatements, But Not For Defendants' Improper Purpose**

Courts "evaluating motions to dismiss must interpret factual disputes and allegations in the plaintiff's favor, even when documents incorporated-by-reference suggest otherwise." *Ochoa*, 2025 WL 841752, at *11 (citing *Khoja*, 899 F.3d at 1014-15). That is why courts in this Circuit and elsewhere have specifically instructed that investor call transcripts and documents containing alleged misstatements cannot be considered for their truth "when the substance of the transcript is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes." *Khoja*, 899 F.3d at 1000; *Michaels Stores*, 2004 WL 7344746, at *3 ("Defendants seek to use the transcript to disprove the Complaint's factual allegations. Such a use is improper in consideration of a motion to dismiss.").

Plaintiff does not dispute that **Exhibits C, F, G, I-K, N-S, T-Y, and AA** can be "incorporated by reference" and considered for the limited purpose of determining whether defendants made the statements contained therein.[2] But as discussed below and as Defendants'

---

[2] **Exhibits C and T** are CrowdStrike's 2023 and 2024 SEC Form 10-Ks. **Exhibits F and G** are CrowdStrike's 2023 and 2024 Proxy Statements**. Exhibits J, K, N-P, R, U, and AA** are transcripts from calls with investors containing certain of the alleged misstatements. **Exhibit V** is a presentation accompanying a transcript**. Exhibits I, S, W, and X** are excerpts from websites containing additional alleged misstatements.

own cited cases make clear, these exhibits cannot be used to dispute the Complaint's well-pleaded allegations, including allegations concerning the market's understanding of Defendants' statements. *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,* 53 F. Supp. 3d 882, 892, 902 (E.D. La. 2014) (noting that "[i]n securities cases, courts may take judicial notice of the contents of public disclosure documents that are filed with the SEC" but only "for the purpose of determining what statements they contain, and ***not*** for proving the truth of their contents" and that, similarly, "courts consider earnings call transcripts ***not*** for the truth of the assertions contained therein, but as an indication of the information available to the public at the time"). And, in any case, these exhibits do not provide any supposed "context" that supports Defendants' arguments.

***First***, Defendants cite **Exhibits C and T**, which are CrowdStrike's 2023 and 2024 SEC Form 10-Ks, for the purported "fact" that no reasonable investor would believe that CrowdStrike tested or conducted phased rollouts for its Rapid Response updates because, according to their say-so, CrowdStrike disclosed that Falcon "automatically transmit[s]" updates "in real time," which meant that these updates were transmitted in "seconds," pushed "to all customers simultaneously," and thus "the time-consuming process for testing software updates" was not appropriate for them. *See* MTD at 5, 24 (citing Exs. C and T).

Defendants severely mischaracterize these exhibits. The language Defendants rely on ***says nothing of the timing of content update deployment***. Even a cursory review reveals that the cited language is merely referring to Falcon's purported ability to "prevent" and detect threats. *See* Ex. C at 4 (Falcon's "Security Cloud … automatically prevent[s] threats in real-time"); Ex. T at 4 ("[O]ur Falcon platform automates detection and prevention capabilities in real time."). Defendants'

13

assertion that these documents disclose that updates are released "to all customers simultaneously" and in "seconds" is not supported by the documents they cite.

Contrary to Defendants' assertions, the Complaint makes clear that Defendants did ***not*** tell investors that CrowdStrike did not test Rapid Response updates or deploy them in industry standard phases. ¶¶60-69. In fact, it is precisely because Defendants did not publicly disclose these facts that industry experts and investors were "slack jawed in horror" when they learned that CrowdStrike did not test its Rapid Response updates or conduct phased rollouts for them. ¶¶77-85, 87-92.

As with each of their exhibits, Defendants may not use incorporation-by-reference to invite the Court to "resolve competing theories against the complaint." *Roe v. East Baton Rouge Parish School Bd.*, 2024 WL 4447229, at *5 (M.D. La. Oct. 8, 2024) (quoting *Khoja*, 899 F.3d at 998); *Michaels Stores*, 2004 WL 7344746, at *3; *SolarWinds*, 595 F. Supp. 3d at 578 n.1. That Exhibits C and T are SEC filings does not alter the clear limitations on the use of incorporation by reference. *See, e.g.*, *Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (adopting plaintiffs' argument that statements contained in defendants' SEC filings should not be accepted as "true," particularly "in a securities fraud action—since the truth of the contents of the SEC reports is typically central to the dispute").

***Second***, as detailed in the Complaint, Plaintiffs allege that Defendants misled investors by touting the thoroughness of CrowdStrike's testing protocols for its Falcon software, leading investors to believe that CrowdStrike ensured that "***code is secure, that it's deployed and that it's run in a secure environment***," and that it had the ability to "***understand if insecure code is being put into the CICD pipeline***," when, in reality, CrowdStrike did not test updates to Falcon

according to basic, industry-standard testing protocols, including testing updates in a pre-production environment. ¶¶124-26.

In response, Defendants misguidedly cite to **Exhibits J and K** in support of their assertion that "in context, it is plain" that these statements did not concern "the process CrowdStrike followed" when rolling out Rapid Response updates. MTD at 13-14 (citing Exs. I, J, and K). But at most, Defendants' own self-serving interpretation of Kurtz's statements raises a fact dispute about what investors understood his statements to mean, which cannot be resolved at the motion to dismiss stage. *Michaels Stores*, 2004 WL 7344746, at *3; *SolarWinds*, 595 F. Supp. 3d at 578 n.1.

*Third*, as set forth in the Complaint, Plaintiffs allege that Defendants told the public that they carefully vetted updates to the Falcon platform and thus had ensured that the Rapid Response program "***doesn't blue screen endpoints with failed updates***," i.e., cause a catastrophic crash of their operating systems. ¶122. The Complaint further alleges that Defendants went so far as to assure investors that CrowdStrike's technology could be used to "***fix***" blue screens and that their technology was so secure that "***when you go through the airport and you see the Microsoft blue screen [airlines] actually ... use our technology to fix it***." ¶¶128-32. In reality, far from "fixing" blue screens, Falcon actually caused blue screens due to CrowdStrike's failure to employ the most fundamental testing protocols for updates to the platform—a failure that ultimately led to the largest blue screen crash in history. ¶123.

Relying on **Exhibits N, O, R, and AA**, Defendants dispute these allegations, arguing that the "full context immediately makes clear" that these statements "did not say a word about CrowdStrike's software updates" or the risk that its updates could cause blue screens, and that Defendants did not "purport to guarantee" that CrowdStrike would "never" cause a blue screen

outage. MTD at 15-18 (citing Exs. N, O, R, and AA). But this is just another attempt by Defendants to have the Court resolve competing inferences and factual disputes about what "the market understood," which is "improper at this stage of litigation." *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *4 n.12 (C.D. Cal. June 7, 2018).

*Fourth*, in the Complaint, Plaintiffs allege that Defendants misled investors during the Class Period by touting the thoroughness of CrowdStrike's testing protocols, including by telling investors that CrowdStrike tested its updates "*in non-production environments*" and "*staging environment that closely resembles the production environment*" before rolling them out, emphasizing to investors that CrowdStrike "*test[s] more than anyone else*" because "*[t]esting and validation [were] really important*" at CrowdStrike, and assuring investors that CrowdStrike always conducts "*canary deployments of new services before rolling out changes to the entire fleet*." ¶¶120, 132, 139, 145. In reality, however, CrowdStrike did not conduct any pre-production testing of updates—let alone test more than anyone else. ¶¶121, 133, 146.

Defendants cite to **Exhibits I, P, S, U, and V** to provide supposed "context" that renders the statements inactionable. Specifically, Defendants assert that review of Exhibits U and V demonstrates that when Defendant Kurtz asserted that CrowdStrike "test[s] more than anyone else," he was only referring to third-party testing, and not CrowdStrike's own testing. *See* MTD at 19-20 (citing Exs. U and V). Likewise, relying on Exhibits I and P, Defendants argue that Defendants' statements that CrowdStrike tested its updates in "non-production" and "staging environment[s]" were not false or misleading because, based on *other language* in the documents, they referred only to CrowdStrike helping *customers* to test their updates—not to CrowdStrike's processes for testing its updates. *See* MTD at 12-13, 15-16 (citing Exs. I and P). And citing to Ex. S, Defendants claim that the Rapid Response update that caused the July 19 outage was a "new

service," so investors would not have understood their statement about "canary deployments" to relate to pertain to "content updates" and thus could not have been misled. MTD at 18 (citing Ex. S).

As explained above, even when documents are incorporated by reference, the content of such documents that is *not* alleged in the complaint cannot be accepted as truth, or to dispute well-pled allegations. *Michaels Stores*, 2004 WL 7344746, at *3; *SolarWinds*, 595 F. Supp. 3d at 578 n.1. This is especially true to the extent that the content of a document incorporated by reference is used to demonstrate how investors interpreted statements. *See Khoja*, 899 F.3d at 1000 (declining to consider investor call transcript for fact of "what investors already knew" about defendant's conduct when "[r]easonable people could debate what exactly this conference call disclosed").

*Fifth*, as set forth in the Complaint, Plaintiff alleges that Defendants misled investors when they represented that CrowdStrike had a "*quality assurance team*," and stated that "*[o]ur quality assurance team is also trained and equipped to assist with testing for accessibility*," when, in reality, quality assurance was not part of CrowdStrike's process at all, and there was no "quality assurance team" to assist with testing. ¶¶136-37.

**Exhibits F and G** are CrowdStrike's 2023 and 2024 Proxy Statements, respectively. Plaintiffs do not dispute that these documents are incorporated by reference, as they contain challenged misstatements, and as such may be considered to show what statements they contain. But, as discussed below, Defendants do not submit these documents to demonstrate what statements they contain, or indeed for any purpose other than establishing the facts contained therein. This approach is improper. *Lovelace*, 78 F.3d at 2018 (considering documents

17

incorporated by reference "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents").

Nevertheless, Defendants improperly cite Exhibits F and G for the "fact" that CrowdStrike maintained a "quality assurance team" *solely* to assist with testing for accessibility, and thus investors must have understood based on their disclosures that accessibility is the only purpose for which CrowdStrike maintained such a team. MTD at 9-10 (citing Exs. F and G). The Complaint, however, makes clear the Proxy stated, without limitation, that "*our* quality assurance team is *also* trained and equipped to assist with testing for accessibility," and that this statement does not state or imply that CrowdStrike's "quality assurance team" was limited in any manner—much less to "testing for accessibility" for the "visually impaired," as Defendants now suggest. ¶¶136-37. These exhibits are not incorporated by reference for the purposes Defendants submit, nor are they properly the subject of judicial notice.

*Finally*, the Complaint alleges that Defendants falsely represented that CrowdStrike "*[met] the stringent requirements*" of FedRAMP and "*[met] the … compliance requirements*" of the DoD when, in truth, CrowdStrike violated those requirements by, among other things, failing to test its software updates in a pre-production environment. ¶¶53-54.

Relying on **Exhibits W, X, and Y**, Defendants mistakenly contend that investors somehow would have figured out that CrowdStrike was *not* meeting FedRAMP's and the DoD's complete set of requirements because the level of authorization to which they represented CrowdStrike's compliance did not require that CrowdStrike satisfy certain provisions of the NIST standards that would have required them to test Falcon's updates in a pre-production environment. MTD at 22-23 (citing Exs. W and X).

18

But as the Complaint makes clear, Defendants did not limit the "stringent requirements" that CrowdStrike purportedly "met" to only those applicable to the "moderate" impact level. ¶141. The supposed "context" Defendants point to in Exhibit W further reinforces this point—CrowdStrike represented to investors that Falcon was subject to "some of the strictest security requirements in the world." Ex. W at 1. Likewise, Exhibit X simply reiterates that Falcon "meets" the "requirements" of "U.S. FedRAMP," without any limitation to a specific impact level of authorization. Ex. X at 7. At best, Defendants once again attempt to manufacture a factual dispute as to the falsity of the alleged misstatements and as to what investors would have understood from those statements. This is not a proper subject for the incorporation-by-reference doctrine. *Khoja*, 899 F.3d at 1014; *Michaels Stores*, 2004 WL 7344746, at \*3; *SolarWinds*, 595 F. Supp. 3d at 578 n.1.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court should not judicially notice or incorporate by reference Defendants' exhibits, and if at all, only to the limited extent that such extrinsic material is offered to show certain statements were made, not that the contents were true. Moreover, whenever documents incorporated-by-reference are used to dispute the well-pled facts in the Complaint, the Complaint must control.

Dated: May 30, 2025

Respectfully submitted,

*/s/ Hannah Ross*_____
**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Hannah Ross
John Rizio-Hamilton
Scott R. Foglietta
Thomas Sperber
Sarah Schmidt
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400

19

Facsimile: (212) 554-1444
hannah@blbglaw.com
johnr@blbglaw.com
scott.foglietta@blbglaw.com
thomas.sperber@blbglaw.com
sarah.schmidt@blbglaw.com

*-and-*

Jonathan D. Uslaner
2121 Avenue of the Stars, Suite 2575
Los Angeles, California 90067
Telephone: (310) 819-3481
jonathanu@blbglaw.com

*Lead Counsel for Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement System, and as Trustee of the New York State Common Retirement Fund*

**MARTIN & DROUGHT, P.C.**
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Weston Centre
112 E. Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
gdrought@mtdlaw.com
fburney@mtdlaw.com

*Liaison Counsel for Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement System, and as Trustee of the New York State Common Retirement Fund*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2025, a true and correct copy of the foregoing document was served via the Court's electronic CM/ECF filing system, which will send an electronic notification of such filing to all counsel of record.

*/s/ Hannah Ross*_____
 Hannah Ross
