# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| *IN RE CROWDSTRIKE HOLDINGS, INC. SECURITIES LITIGATION* | Civil Action No. 1:24-cv-00857-RP |

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT

Mark C. Holscher, P.C. (*pro hac vice*)
Austin Norris, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Email:  mark.holscher@kirkland.com
        austin.norris@kirkland.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
Kevin M. Neylan, Jr. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
Email:  sandra.goldstein@kirkland.com
        kevin.neylan@kirkland.com

Steven J. Wingard (State Bar No. 00788694)
Santosh Aravind (State Bar No. 24095052)
Robert "Robby" Earle (State Bar No. 24124566)
SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX  78701
Telephone: (512) 495 6300
Email:  swingard@scottdoug.com
        saravind@scottdoug.com
        rearle@scottdoug.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

ARGUMENT..........................................................................................................................2

I.     PLAINTIFF HAS NOT ALLEGED ANY ACTIONABLE MISSTATEMENTS. ............2

       A.     The Court Must Read the Statements in Context Like a Reasonable
             Investor. ..................................................................................................................2

       B.     The Accessibility Statements Are Not Properly Alleged to Be False. ....................5

       C.     The Product Usage Statements Are Not Properly Alleged to Be False...................6

       D.     The Software and Testing Statements Are Not Properly Alleged to Be
             False...........................................................................................................................7

       E.     The Regulatory Compliance Statements Are Not Properly Alleged to Be
             False.........................................................................................................................10

       F.     Plaintiff Ignores Contradictory Disclosures and Cannot Rely on Alleged
             Industry Standards. .................................................................................................11

       G.     Plaintiff Cannot Rely on Allegations Attributed to Former Employees.................12

II.    PLAINTIFF HAS NOT PLED SCIENTER. ....................................................................12

       A.     Plaintiff's Failure to Plead Motive Weighs Heavily Against Scienter. .................13

       B.     Plaintiff's Circumstantial Allegations Do Not Establish Scienter.........................15

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ...................................................................................14

*In re Azurix Corp. Sec. Litig.*,
198 F. Supp. 2d 862 (S.D. Tex. 2002) ........................................................................5

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ......................................................................16

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F. Supp. 2d 533 (N.D. Tex. 2003) ................................................................*passim*

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) ........................................................................3

*Coates v. Heartland Wireless Commc'ns, Inc.*,
55 F. Supp. 2d 628 (N.D. Tex. 1999) ..................................................................13, 15

*Dennis v. Gen. Imaging, Inc.*,
918 F.2d 496 (5th Cir. 1990) .....................................................................................8

*Firefighters Pension & Relief Fund of New Orleans v. Buhlman*,
53 F. Supp. 3d 882 (E.D. La. 2014)............................................................................8

*Gamboa v. Citizens, Inc.*,
2018 WL 2107205 (W.D. Tex. May 7, 2018) ...........................................................14

*Hall v. Rent-A-Ctr., Inc.*,
2017 WL 6398742 (E.D. Tex. Oct. 19, 2017) .....................................................12, 15

*Heck v. Orion Grp. Holdings, Inc.*,
468 F. Supp. 3d 828 (S.D. Tex. 2020) ........................................................................8

*Izadjoo v. Helix Energy Solutions Grp., Inc.*,
237 F. Supp. 3d 492 (S.D. Tex. 2017)..................................................................10, 17

*Jacobowitz v. Range Resources Corp.*,
596 F. Supp. 3d 659 (N.D. Tex. 2022) ........................................................................5

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001).....................................................................................15

*Kellam v. Servs.*,
2013 WL 12093753 (N.D. Tex. May 31, 2013), *aff'd*, 560 F. App'x 360 (5th Cir. 2014) ..................................................................................................................9, 12

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) .................................................................16, 17

*Kunzweiler v. Zero.Net, Inc.*,
2002 WL 1461732 (N.D. Tex. July 3, 2002) ..........................................................3

*La Pietra v. RREEF Am. L.L.C.*,
738 F. Supp. 2d 432 (S.D.N.Y. 2010) ....................................................................2

*Linenweber v. Sw. Airlines*,
693 F. Supp. 3d 661 (N.D. Tex. 2023) ............................................................*passim*

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)................................................................................................11

*McNulty v. Kanode*,
2013 WL 12077503 (W.D. Tex. Nov. 6, 2013)......................................................8

*Melder v. Morris*,
27 F.3d 1097 (5th Cir. 1994) ..................................................................................6

*Nathenson v. Zonagen Inc.*,
267 F.3d 400 (5th Cir. 2001) ................................................................................12

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
423 F. Supp. 2d 364 (S.D.N.Y. 2006) ....................................................................2

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
58 F.4th 195 (5th Cir. 2023) ................................................................................14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)..............................................................................................1, 2

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) ................................................................................17

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Zale Corp.*,
499 F. App'x 345 (5th Cir. 2012) ........................................................................16

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
307 F. Supp. 3d 583 (S.D. Tex. 2018) ...............................................................3, 9

*Plaisance v. Schiller*,
2019 WL 1205628 (S.D. Tex. Mar. 14, 2019)......................................................14

iii

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ...................................................................................14

*In re SolarWinds Cop. Sec. Litig.*,
   595 F. Supp. 3d 573 (W.D. Tex. 2022) ............................................................*passim*

*Spitzberg v. Houston Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) .....................................................................................3

*Tongue v. Sanofi*,
   816 F.3d 199 (2d. Cir 2016)........................................................................................3

*Tuchman v. DSC Commc'ns Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ...................................................................................16

*In re Venator Materials PLC Sec. Litig.*,
   547 F. Supp. 3d 624 (S.D. Tex. 2021) ........................................................................3

**Statutes**

15 U.S.C. § 78u-5 ..............................................................................................................8

**INTRODUCTION**

Two things are abundantly clear. First, this case rests on egregious distortions of CrowdStrike's public statements, and it cannot survive when those statements are viewed in their proper context, as required by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 575 U.S. 175 (2015). Second, plaintiff's theory of scienter is fatally flawed. Each deficiency, on its own, requires dismissal.

Plaintiff seeks to prevent the Court from viewing CrowdStrike's statements in context, and it repeatedly insists doing so would raise factual disputes. That gambit should be rejected. The Supreme Court has held that the Court not only can—but must—review CrowdStrike's statements objectively, from "the perspective of a reasonable investor" who understands "the statement[s] fairly and in context." *Id.* at 186, 194. Simply put, "[p]leadings which distort a company's actual public statements cannot support a claim for securities fraud." *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 563 (N.D. Tex. 2003). But that is what the Complaint repeatedly does on every subject at issue here. The only proper remedy is dismissal.

Separately, on scienter, plaintiff cannot answer the question why George Kurtz and Michael Sentonas would knowingly set CrowdStrike on a path to inevitable catastrophe without any motive whatsoever. Plaintiff cannot skirt that question by retreating to a theory that Kurtz and Sentonas took a "reckless gamble," because—if plaintiff is to be believed—Kurtz and Sentonas would have known that gamble was doomed to fail and inflict severe damage on CrowdStrike and themselves. As two of the most significant individual shareholders in the Company, Kurtz and Sentonas would be among the biggest victims of their own scheme. (*See* Mot. Ex. G at 52.) It makes no sense that they would have knowingly led CrowdStrike into a disaster.

Plaintiff's heavy reliance on *In re SolarWinds Cop. Sec. Litig.*, 595 F. Supp. 3d 573 (W.D. Tex. 2022), does not save the Complaint. There, the plaintiffs alleged direct evidence that the

defendants were fully aware that their statements regarding SolarWinds' security were false, and that their most sensitive company password was publicly available on a popular website for 18 months. *Id.* at 583-86. The only individual defendant for whom this Court found scienter was the "face (literally)" of the company's security efforts and continually pointed investors to misleading statements that he knew were false. *Id.* at 584. Nothing of the sort is alleged here. Plaintiff has not come close to alleging a "strong inference" of scienter. The Complaint must be dismissed.

## ARGUMENT

### I. PLAINTIFF HAS NOT ALLEGED ANY ACTIONABLE MISSTATEMENTS.

#### A. The Court Must Read the Statements in Context Like a Reasonable Investor.

Plaintiff repeatedly insists that the Court cannot review Defendants' statements in context, because doing so would supposedly introduce "factual disputes." (Opp. 16, 19, 22.) That is wrong. To survive a motion to dismiss, a plaintiff must adequately plead that the challenged statements were false or misleading to "a ***reasonable person*** reading the statement[s] ***fairly and in context***." *Omnicare*, 575 U.S. at 194 (emphasis added). That inquiry does not raise factual disputes, because the question "whether a statement is 'misleading' depends on the perspective of a reasonable investor: The inquiry . . . is objective." *Id.* at 186-87. The Court must undertake this inquiry at the motion to dismiss stage, because "[p]leadings which distort a company's actual public statements cannot support a claim for securities fraud." *Capstead*, 258 F. Supp. 2d at 563. And, critically, "investors are presumed to have the ability to be able to digest varying reports and data." *La Pietra v. RREEF Am. L.L.C.*, 738 F. Supp. 2d 432, 443 (S.D.N.Y. 2010) (quoting *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 397 (S.D.N.Y. 2006)).

Courts uniformly undertake this context analysis on motions to dismiss. In *Linenweber v. Southwest Airlines*, for example, the court dismissed a complaint because the statements were "neither false nor misleading when considered in the context from which [p]laintiffs removed

2

them." 693 F. Supp. 3d 661, 680-81 (N.D. Tex. 2023). Similarly, in *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, the court held—on a motion to dismiss—that, "[e]valuated in context, the statements here were not misleading," because "a reasonable investor would not understand" the statements to make the representations plaintiff claimed they did. 307 F. Supp. 3d 583, 635 (S.D. Tex. 2018). Likewise, in *Capstead*, the court held that the plaintiff failed to plead falsity because its interpretations were "belied [by defendant's] actual public statements." 258 F. Supp. 2d at 563. And in *Tongue v. Sanofi*, the court affirmed dismissal because investors in a pharmaceutical company were "sophisticated" enough to understand highly technical disclosures and FDA regulations. 816 F.3d 199, 212-14 (2d. Cir 2016).

Plaintiff's own cases reiterate this point. (Opp. 16, 19, 22.) In each, the court only declined to dismiss after concluding that the plaintiff's interpretation of the statements was reasonable in context. *See Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 690 (5th Cir. 2014); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 473 (S.D. Tex. 2016); *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 656 (S.D. Tex. 2021); *Kunzweiler v. Zero.Net, Inc.*, 2002 WL 1461732, at *11 (N.D. Tex. July 3, 2002). That is not the case here.

Even if all of plaintiff's factual allegations are assumed to be true, the Complaint must be dismissed because none of the alleged facts renders any of the challenged statements false or misleading when the statements are understood in context from the perspective of a reasonable investor. And to be clear, that conclusion holds even if this Court allows plaintiff to contort Rapid Response Content updates into "software" updates, and even if the Court allows plaintiff to maintain the counterfactual allegation that the July 19 outage was triggered by the release of a software update. Neither proposition is true, as shown by the documents incorporated in the Complaint. (Mot. 4-5, 16-17.) And plaintiff does not dispute that when this mischaracterization

3

is corrected, all the challenged statements fail.  But nothing in this motion turns on that distinction. The challenged statements are not actionable, even if Rapid Response Content updates are deemed to be software updates and the July 19 outage was triggered by a purported software update.[1]

Plaintiff's misplaced contention that content updates are "software" updates also unwittingly creates a further problem with plaintiff's claims.  The Complaint is premised on the false theory that Defendants misrepresented and concealed from investors "the risk that CrowdStrike could release a faulty software update," leading to service disruptions.  (Compl. ¶8; *id.* ¶¶59, 119; *see also* Opp. 3 (asserting Defendants should have disclosed "risk of 'blue screen[ing] endpoints with failed updates'").)  But Defendants repeatedly disclosed to investors the risk of an outage from software updates.  For example, the Company's 10-Ks during the Class Period disclosed that "[r]eal or perceived defects, errors or vulnerabilities in our Falcon platform and cloud modules . . . [including] misconfiguration of our solutions, . . . could harm our reputation and adversely affect our business, financial position, and results of operations.  ***Because our cloud native security platform is complex, it may contain defects or errors that are not detected until after deployment***."  (Mot. Ex. C at 27; Ex. T at 25 (emphasis added).)  The Company further disclosed that "[w]e have experienced, and may in the future experience, ***service interruptions*** and other performance problems" from "***errors, defects or performance problems in our software***" that "could damage our reputation, negatively affect our relationship with our customers or otherwise harm our business."  (Mot. Ex. C at 29; Ex. T at 27-28 (emphasis added).)  Several additional disclosures warned of this purportedly "omitted" risk.  (*See* Mot. Ex. C at 22, 24, 28;

---

[1] To argue otherwise, the Opposition quotes Kurtz's statement on the Today Show—on the day of the outage—which mentioned a "software bug," but Kurtz did not say that Rapid Response Content updates are software updates, or that CrowdStrike released a software update on July 19. (Compl. ¶78.)  If there were any ambiguity, the later-in-time Root Cause Analysis and Post-Incident Report, which the Complaint incorporates by reference, would control.  (Mot. 4-5, 16-17.)  Regardless, as explained above, nothing in this motion turns on that distinction.

Ex. T at 21, 23.)  Collectively, these disclosures sufficiently apprised investors of the pertinent risks.  *See Capstead*, 258 F. Supp. 2d at 555 (finding that risk disclosures were sufficient despite plaintiffs' argument they did not "warn [investors] of all possible risks").

Plaintiff cannot maintain a securities fraud claim based on an allegedly undisclosed risk that was, in fact, disclosed to investors.  *See Capstead*, 258 F. Supp. 2d at 555 (dismissing claims where company "adequately warned investors of exactly the risks Plaintiffs contend were not disclosed"); *Jacobowitz v. Range Resources Corp.*, 596 F. Supp. 3d 659, 676 (N.D. Tex. 2022) (same); *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 882-84 (S.D. Tex. 2002) (same). Plaintiff's gambit to mislabel Rapid Response Content updates as "software" updates cannot save the Complaint, because investors were repeatedly warned that software updates may contain errors and cause service disruptions.  "A reasonable investor could not have read" CrowdStrike's SEC filings "without realizing" this risk.  *Capstead*, 258 F. Supp. 2d at 556.

### B.   The Accessibility Statements Are Not Properly Alleged to Be False.

Emblematic of plaintiff's egregious distortions of Defendants' statements is its attempt to transform statements about making products accessible to the visually impaired into fraudulent statements about software updates.  The Accessibility Statements must be dismissed because they plainly did not say or imply that CrowdStrike had a quality assurance team dedicated to testing software updates.  (Mot. 9-12.)  Plaintiff now grudgingly concedes that "CrowdStrike asserted that it maintained a 'quality assurance team' in the context of describing product 'accessibility.'" (Opp. 27.)  But plaintiff still insists that a reasonable investor would have leapt to the conclusion that CrowdStrike also had a quality assurance team dedicated to testing ***software updates***, because CrowdStrike did not say the quality assurance team for accessibility was "limited" to testing for accessibility.  (*Id.*)  That is silly.  The context of these statements was expressly limited by the heading "Accessibility."  (Mot. 10.)  That plaintiff would stretch this far to attempt to allege a

5

claim speaks volumes about plaintiff's case and requires dismissal.  *See Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (rejecting claims where plaintiffs "severely distort[ed] the company's public statements").

### C.       The Product Usage Statements Are Not Properly Alleged to Be False.

Plaintiff has not resuscitated any of the six Product Usage Statements.  (Mot. 12-16.)  First, as to the allegation that CrowdStrike falsely said it deploys updates to a "staging environment" before disseminating them more broadly, plaintiff now concedes that the challenged statement does not actually describe CrowdStrike's own process, but instead is a statement about how customers could update *their* software, and only then if they follow a specific process called CI/CD.  (Mot. 13-14; Opp. 21.)  Backtracking from its misrepresentation to this Court that CrowdStrike was describing its own process, plaintiff now suggests that CrowdStrike's statements about customers' processes were actually false statements about CrowdStrike's process for updating software, because "a reasonable investor would understand that statement to assert that CrowdStrike practiced what it preached."  (Opp. 21.)  That argument is a non-sequitur.  And the challenged statement does not say CrowdStrike utilizes CI/CD, nor does it recommend that customers should deploy updates to a staging environment.  Instead, CrowdStrike described staging environments as one of ten steps that a "typical" CI/CD process might include, while noting that for each customer "[e]very CI/CD pipeline will differ."  (Mot. Ex. I at 3.)  That statement is "neither false nor misleading when considered in the context from which [p]laintiff[] removed" it, so claims based on these statements should be dismissed.  *Linenweber,* 693 F. Supp. 3d at 680.

The same flaw applies to the second, third and sixth Product Usage Statements (Mot. 13-16): plaintiff fails to rebut that the challenged statements were only about how customers can update and test their code, and say nothing about the process CrowdStrike followed when updating and testing its code.  (*See* Opp. 21.)  Plaintiff cannot misrepresent Defendants' statements to this

6

Court and then claim a "factual dispute" when Defendants provide the proper context for those statements. *Linenweber,* 693 F. Supp. 3d at 680-81.

That leaves the fourth and fifth Product Usage Statements, which plaintiff seizes on merely because they use the phrase "blue screens." (Mot. 14-15.) In these two statements, Kurtz explained that when CrowdStrike's customers experience blue screens, they can use a product called Falcon IT to "fix" the blue screens more cheaply and more quickly than if they had to "send out an IT person." (Mot. 15.) Plaintiff does not even allege that statement was false, but instead claims that it was misleading for Kurtz to say customers can use "Falcon [to] 'fix[]' blue screens when Falcon actually causes blue screens with untested updates." (Opp. 15.) Kurtz's statements about how Falcon IT could be used by customers say absolutely nothing about CrowdStrike's process for issuing or testing its own software updates or content updates. The notion that these statements are somehow related because they both mention "blue screens" is wholly illogical and ignores their clear context. *See Capstead*, 258 F. Supp. 2d at 563.

**D.      The Software and Testing Statements Are Not Properly Alleged to Be False.**

Plaintiff's claims based on the five Software and Testing Statements are deficient across the board. ***First***, plaintiff goes on at length about Sentonas's statement, from April 2023 (more than a year before the July 19 incident), that CrowdStrike's "agent cloud architecture . . . doesn't blue screen endpoints with failed updates." (Compl. ¶122; Opp. 14-15.) Plaintiff's fixation on this statement—the ***only*** alleged false statement attributed to Sentonas[2]—is pure fraud by hindsight. *See Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 854 (S.D. Tex. 2020). Plaintiff does

---

[2] Although plaintiff suggests that Sentonas and Kurtz are also responsible for "website statements," such attribution fails absent allegations that they reviewed or approved the specific false statements at issue. *See SolarWinds*, 595 F. Supp. 3d at 591 (individual defendants "reviewed and approved" specific false statements). Here, plaintiff only vaguely alleges that Defendants would sometimes direct certain unspecified information to be included on the website. (Compl. ¶138 n.179.)

not allege Falcon had caused any endpoints to blue screen with failed updates as of April 2023, or that Sentonas had any basis to anticipate blue screen issues in the future, which means Sentonas's statement was not "false [or misleading] when made."  (Mot. 18 (citing *Heck*, 468 F. Supp. 3d at 848).)[3]  Plaintiff responds that "Sentonas's words . . . were not limited to the past" (Opp. 14), but that would mean Sentonas's statement is a forward-looking statement that is protected by the PSLRA's safe harbor, both because plaintiff does not allege Sentonas had "actual knowledge . . . that the statement was false or misleading" and the presentation during which the statement was made included meaningful cautionary statements.  (Mot. Ex. R at 4); *see also* 15 U.S.C. §§ 78u-5(c)(1)(B)(i), (c)(2); *McNulty v. Kanode*, 2013 WL 12077503, at *9-10 (W.D. Tex. Nov. 6, 2013).  Further, Sentonas did not say or imply anything about CrowdStrike's process for testing or updating software or Rapid Response Content.  Sentonas said CrowdStrike's "agent cloud architecture" is superior to competitors because it is a "simple and elegant platform solution." (Mot. Ex. R at 6.)  Plaintiff's allegations do not render that statement false or misleading.

*Second*, with respect to a CrowdStrike blog post about JSON marshalling that said "we always do canary deployments of new services," plaintiff does not dispute that CrowdStrike never once indicated that Rapid Response Content updates are "new services."  (Mot. 18.)  The Opposition asserts that content updates are new services, but the Complaint does not make that allegation, and the Opposition points to no CrowdStrike statement that even arguably suggests as much.  (Opp. 24.)  As a fallback, plaintiff argues that CrowdStrike's blog post would have led investors to believe that CrowdStrike used canary deployments not just for new services, but for *everything*, including content updates.  (Opp. 23-24.)  This leap is implausible, because plaintiff

---

[3] *See also Firefighters Pension & Relief Fund of New Orleans v. Buhlman*, 53 F. Supp. 3d 882, 910 (E.D. La. 2014) ("a statement true when made does not become fraudulent because things unexpectedly go wrong"); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 506 (5th Cir. 1990) ("the statement was true and accurate when made and so cannot be a misstatement").

alleges that canary deployments take "24 to 48 hours" to complete (Compl. ¶68), but CrowdStrike disclosed that it rolled out security updates "in real time across [its] entire global customer base," *i.e.*, "within seconds" (Mot. 24).  No reasonable investor would understand an obscure blog post about JSON marshalling and "new services" to mean that ***all*** of CrowdStrike's updates (including "in real time" updates) were deployed in phases over "24 to 48 hours."

***Third and fourth***, as to CrowdStrike's statements that it "tests our software on a regular basis" and has "a regular release process to update and enhance our existing solutions" (Mot. 19), plaintiff has no good answer to cases holding that very similar statements were not actionable because "regular" testing does not mean testing is "exhaustive" or "100 percent effective."  (Mot. 18 (citing *Linenweber*, 693 F. Supp. 3d. at 678-79, and *Plains All Am. Pipeline*, 307 F. Supp. 3d at 623-24).)  Plaintiff buries its response in a footnote (Opp. 22 n.6), but that footnote does nothing to distinguish those cases.  In *Linenweber* and *Plains All Am. Pipeline*, like here, plaintiffs attacked general statements about testing because the testing failed to prevent high-profile mistakes—but that is not enough.  *Linenweber*, 693 F. Supp. 3d. at 678-79; *Plains All Am. Pipeline*, 307 F. Supp. 3d at 623-24.  Plaintiff ignores that for more than a decade before July 19, 2024, CrowdStrike's Rapid Response Content updates ran constantly around the clock to address new cybersecurity threats.  (*See* Mot. Ex. Q at 22.)  That one of tens of thousands of these updates did not work as expected does not render false CrowdStrike's general statements about testing.[4]

***Fifth***, plaintiff ignores the fact that Kurtz's statement that "testing and validation is really important" and that "[w]e test more than anyone else" referred to third-party testing done to ensure Falcon is effective at blocking cyberthreats, not testing to ensure software or content updates are

---

[4] Plaintiff also fails to respond to CrowdStrike's argument that statements about "enhanc[ing]" solutions are puffery.  (Mot. 19 n.4); *see also Kellam v. Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd*, 560 F. App'x 360 (5th Cir. 2014).

free of bugs.  (Mot. 19-20.)   Plaintiff asserts that Kurtz's statement was made "without any reference to third parties" (Opp. 22), but the accompanying slide deck says Falcon "achieved 100%" ratings by third parties Frost & Sullivan, AV-Comparatives, and MITRE, with respect to prevention and protection against "malware." (Mot. Ex. U at 5; Ex. V at 10.)  Reasonable investors would have understood that context and would not have falsely equated Kurtz's statements with entirely different kinds of testing.  *See Izadjoo v. Helix Energy Solutions Grp., Inc.,* 237 F. Supp. 3d 492, 501-502 & n.1 (S.D. Tex. 2017) (no falsity after "consider[ing] [defendant's] earnings call presentation slides").  Moreover, plaintiff's assertions concerning materiality and falsity do not rebut CrowdStrike's argument that Kurtz's vague statements about testing are puffery (Mot. 20)— non-actionable statements "that are short on factual content and difficult to prove true or false." *Linenweber*, 693 F. Supp. 3d at 675-77 (holding that vague statements concerning commitment to safety were not actionable).

## E.     The Regulatory Compliance Statements Are Not Properly Alleged to Be False.

There is no dispute that as of the July 19 outage, CrowdStrike truthfully claimed to have obtained only Moderate FedRAMP and DoD Impact Level 4 authorizations, and no other higher-level FedRAMP or DoD authorizations.  (Mot. 23.)   Plaintiff does not dispute that those authorizations ***do not require*** staged testing or phased rollouts.  (*Id.*; *see also* Opp. 25-26.)  Still, plaintiff asserts that investors could have been misled into thinking CrowdStrike was meeting the higher-level FedRAMP and DoD authorizations that CrowdStrike did not say it had.  (Opp. 25.) That argument makes no sense.  Plaintiff does not identify any statements in which CrowdStrike purported to maintain or meet higher-level authorizations.[5]

---

[5] Plaintiff also asserts that CrowdStrike told investors "that it was 'FedRAMP *High*-Impact Level *Ready*.'"  (Opp. 26.)  That assertion is not in the Complaint and is therefore not before the Court. In any event, it does not help plaintiff, because—in the very webpage plaintiff cites—CrowdStrike

Plaintiff then asserts that one NIST standard, AC-5, could be read as requiring CrowdStrike to maintain a separate quality assurance team for software testing.  (Opp. 26.)  But AC-5 plainly does not require any such thing.  (Mot. Ex. Y at F-18.)  Tellingly, plaintiff does not cite or quote any language from AC-5 or any authority interpreting it.

### F.  Plaintiff Ignores Contradictory Disclosures and Cannot Rely on Alleged Industry Standards.

As CrowdStrike's motion explained, plaintiff ignores significant disclosures contradicting key elements of plaintiff's theory that CrowdStrike misled investors into believing CrowdStrike employed phased rollouts for Rapid Response Content updates.  (Mot. 23-25.)  Plaintiff does not offer any competing interpretation of CrowdStrike's SEC disclosures concerning real time updates for Rapid Response Content.  (Mot. 24.)  Its only response (Opp. 23-24) is to point to the "canary deployments" blog post discussed above, *see supra* pp. 8-9, but that statement is inapposite for the reasons explained.  As a result, any allegations related to "phased rollouts" must be dismissed.

Plaintiff cannot fall back on a theory that "industry standards" led investors to assume facts about CrowdStrike's testing because securities fraud requires a false or misleading statement; "[p]ure omissions are not actionable."  *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024).  (Mot. 25.)  And CrowdStrike also showed that plaintiff has not sufficiently pled the existence of such industry standards in the first place, because plaintiff's allegations are based overwhelmingly on a handful of articles that post-date the July 19 outage, none of which speaks to industry norms during the alleged Class Period.  (Mot. 25-27.)  Plaintiff does not respond at all with respect to phased rollouts or quality assurance.  (*See* Opp. 23.)  For pre-production testing, plaintiff asserts that the Complaint cites "dozens of industry experts" (*id.*),

---

made clear that it was ***not*** yet FedRAMP High authorized, but had merely passed the first of "three milestones" on the way to High authorization.  *See CrowdStrike Achieves FedRAMP JAB High "Ready" Designation*, CrowdStrike Blog (Dec. 4, 2023), https://bit.ly/43FFg7W.

without disputing that the Complaint in fact cites three sources: two articles that post-date the July 19 incident and one undated article, and "[n]one of these articles say that testing in a pre-production environment was universally practiced by cybersecurity firms." (Mot. 25-26.) For both reasons, assertions about industry standards are legally irrelevant and not well-pled.

### G.    Plaintiff Cannot Rely on Allegations Attributed to Former Employees.

Plaintiff's core factual allegations fail because they rely overwhelmingly on eight deficient anonymous FE allegations. CrowdStrike demonstrated at length that none of the eight FEs worked in relevant roles or would have relevant knowledge. (Mot. 9, 11-12, 20-21.) The Opposition does not address, much less dispute, that none of the FEs would possess relevant information, and therefore waives the issue. *Kellam*, 2013 WL 12093753, at *3. Pursuant to several cases which plaintiff ignores (Mot. 8, 21), these FEs' allegations should be disregarded. Unlike *SolarWinds*, this case does not involve challenged statements about universal company policies and practices that "applied to employees of the company broadly," such that any employee could prove them false. 595 F. Supp. 3d at 585. Here, the alleged misstatements purportedly concern specific facets of CrowdStrike's "testing and quality assurance processes" (Compl. ¶6), none of which were within the FEs' purview. Plaintiff's own cases affirm that under these circumstances, FE-based allegations may be credited only if "a person in the position occupied by the [FE] would possess the information pleaded." *Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6398742, at *28 (E.D. Tex. Oct. 19, 2017). Plaintiff's allegations fall well short of that bar.

## II.    PLAINTIFF HAS NOT PLED SCIENTER.

Plaintiff's scienter allegations are fatally deficient. Plaintiff has abandoned any suggestion that Kurtz or Sentonas acted with "intent to deceive"—instead, plaintiff retreats to alleging they acted with "severe recklessness." (Opp. 27, 34-35.) But severe recklessness is a high bar—it "resembles a slightly lesser species of intentional misconduct," and extends beyond "merely

12

simple or even inexcusable negligence," requiring "an extreme departure from the standards of ordinary care." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001). Importantly, scienter allegations premised on allegations that defendants "violated industry standards" are "insufficient without corresponding fraudulent intent." *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 636 (N.D. Tex. 1999). Plaintiff does not come close to creating a "strong inference" that Kurtz and Sentonas knowingly violated any industry standard.

*SolarWinds* is instructive. There, the defendant "often appeared in interview[s] endorsing SolarWinds' cybersecurity efforts, he was the face (literally) of the Security Statement page on the company's website, and he addressed cybersecurity issues when they arose." *SolarWinds*, 595 F. Supp. 3d at 584. The defendant was aware that the company's cybersecurity had been breached in a prior incident where the password to the most sensitive company server—the easily guessed "solarwinds123"—was posted on a popular public website for 18 months. *Id.* An executive resigned in protest after presenting detailed concerns about security to other executives which the company refused to address. *Id.* at 579. Yet even after learning of the breach and knowing "that something was dangerously amiss," the defendant continued touting the company's security and directing investors to misleading statements. *Id.* at 584. Accordingly, this Court found that the plaintiffs had adequately alleged that one defendant acted with severe recklessness. *Id.*

As explained below, nothing of the sort is alleged here. Kurtz and Sentonas are not the "face" of CrowdStrike's update process, there is no allegation that they were aware of a prior outage, they did not refer investors to misleading statements after the outage, and there is no indication that employees warned them about testing or quality assurance issues concerning software or content updates. *Id.* at 591-92. The Complaint fails to plead scienter.

### A.    Plaintiff's Failure to Plead Motive Weighs Heavily Against Scienter.

Plaintiff has not answered the "critical" question posed by Fifth Circuit law: why would

13

Kurtz and Sentonas knowingly violate testing and updating standards that, according to plaintiff, are "the most basic and well-established industry requirements," when—again, according to plaintiff—"even '[f]irst-year programming students'" would have known that such deficiencies would inevitably result in disaster?  (Opp. 29; *see also* Mot. 27-28.)

Plaintiff cannot sidestep the question of motive by falling back on purported recklessness. (Opp. 33-34.)  The Fifth Circuit has made clear that "absent any allegation of motive," it is exceedingly difficult for a plaintiff "to raise a strong inference that . . . defendants acted with . . . severe recklessness."  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 645 (5th Cir. 2005).  Whereas in *Six Flags*, the complaint alleged that defendants were incentivized to defraud investors because they would receive outsized bonuses, the Complaint here fails to allege ***any*** motive.  *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 215-16 (5th Cir. 2023).

Plaintiff asserts that Kurtz and Sentonas were motivated to "maintain Falcon's competitive marketing edge" and grow CrowdStrike's "stock price."  (Opp. 34.)  But courts routinely reject allegations of motives "universal to all corporate executives such as the desire to maintain a high stock price."  *Plaisance v. Schiller*, 2019 WL 1205628, at *21 (S.D. Tex. Mar. 14, 2019).  "Absent an allegation that the defendants ***profited*** from the inflated stock," motive is not well-pled.  *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002) (emphasis added).  Further, the "absence" of allegations that defendants "profited from the alleged misrepresentations . . . supports an inference opposing the claim that a defendant acted with scienter."  *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *4 (W.D. Tex. May 7, 2018), *report and recommendation adopted*, 2018 WL 2422764 (W.D. Tex. May 29, 2018) (Pitman, J.).  Here, plaintiff has not alleged that Kurtz or Sentonas profited at all.  (Mot. 28; *id.* 2-3.)  When the stock price dropped Sentonas and Kurtz lost significant sums, making them among the largest individual victims of their own purported

14

scheme. (Mot. Ex. G at 52.) This cuts decisively against an inference of scienter. *R2*, 401 F.3d at 645; *see also Gamboa*, 2018 WL 2107205, at *4; Mot. 35 (collecting cases).

### B.    Plaintiff's Circumstantial Allegations Do Not Establish Scienter.

Plaintiff's vague circumstantial scienter allegations cannot make up for plaintiff's defective theory. None of plaintiff's circumstantial allegations supports an inference of scienter.

*First*, the allegation that Falcon is CrowdStrike's "only product" does not move the needle. (Opp. 28.) Plaintiff ignores the cases rejecting this exact "core operations" theory. (Mot. 32.)[6]

*Second*, the allegation that CrowdStrike departed from industry standards, (Opp. 28-29), is not sufficient to plead scienter. *Coates*, 55 F. Supp. 2d at 636. And plaintiff has not plausibly alleged the existence of such standards in the first place. *See supra* pp. 11-12; Mot. 25-27.

*Third*, plaintiff attempts to impute scienter to Kurtz and Sentonas based on a different "faulty update" of a different product, at "another cybersecurity company, McAfee" more than a decade before the outage. (Opp. 6, 29-30.) But plaintiff cites no support for the assertion that supposed knowledge of software issues at McAfee can impute knowledge of different issues at a different company 14 years later. If anything, these allegations cut strongly against scienter, because it "defies economic reason" to suggest that based on their purported prior experience at McAfee, Kurtz and Sentonas would knowingly engineer a repeat incident at CrowdStrike without any motive to do so. *Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001). And as to the alleged faulty Linux updates, plaintiff does not dispute that the Complaint fails to allege any details about them, or even that Kurtz or Sentonas knew about them. (Mot. 31; *see also* Opp. 29-30.)

*Fourth*, Kurtz and Sentonas's post-July 19 statements apologizing for the incident, and

---

[6] The core operations doctrine is "extremely narrow" and "might" apply when a product is "the only product of a small-scale company." *Hall*, 2017 WL 6398742, at *33. Here, like in *Hall*, the doctrine is inapposite because CrowdStrike has thousands of employees. *Id.*

CrowdStrike's adoption of new procedures after the incident, (Opp. 30-31), reveal nothing about their state of mind at the time of the alleged representations. (Mot. 31-32 (collecting cases).) Defendants' statements that "we got this wrong" and "we failed you" (Compl. ¶¶92, 116) cannot be evidence of past fraud. *See Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1070 (5th Cir. 1994) (a "mea culpa does not sufficiently satisfy the scienter requirements of pleading in securities fraud cases"); *accord Pipefitters Loc. No. 636 Defined Ben. Plan v. Zale Corp.,* 499 F. App'x 345, 350 (5th Cir. 2012). If plaintiff's theory were accepted, any public corporation that rightly apologized to its customers and investors for a mistake would be liable for securities fraud.

*Fifth*, relying on *SolarWinds*, plaintiff alleges that Kurtz and Sentonas held themselves out as "knowledgeable" about Falcon and software testing generally. (Opp. 31.) But plaintiff just rehashes its allegation that Kurtz and Sentonas made a handful of statements. This is nothing like *SolarWinds*, where the defendant was the "face (literally) of the" company's cybersecurity efforts and "held himself out as a responsible and knowledgeable authority" who was "focus[ed] on safety . . . like a laser." 595 F. Supp. 3d at 584; *see also In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 783 (S.D. Tex. 2012) (dismissing claims against eight executives, but allowing claims against CEO because he was a continual public-facing "champion" and "spokesperson" for the company alleged to have made numerous demonstrably false statements). By contrast, Kurtz and Sentonas allegedly made a few statements during investor presentations and regular earnings calls, just like any executive of a public company.

*Sixth*, plaintiff alleges that Kurtz or Sentonas may have signed FedRAMP and DoD security requirements, which entailed a duty to monitor compliance. (Opp. 31-32.) This allegation is doubly irrelevant: first, because CrowdStrike's FedRAMP and DoD authorizations did not require the testing and updating procedures plaintiff alleges, *see supra* pp. 10, and second, because

16

signing a declaration that turns out to be false does not support scienter unless the defendant "knew" it was false, which plaintiff's theory of recklessness does not allege. *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 866 (S.D. Tex. 2016).

**Seventh**, plaintiff simply ignores that CrowdStrike specifically warned investors about the risk of a faulty software update leading to service interruptions and financial harm. *See supra* pp. 4-5. This "[a]dditional transparency, not disputed by plaintiffs, further negates the inference of scienter." *Owens v. Jastrow*, 789 F.3d 529, 541 (5th Cir. 2015).

**Finally**, plaintiff alleges that Kurtz and Sentonas were "warned by CrowdStrike employees" about "understaffing" and unspecified "critical issues." (Opp. 10, 32-33.) But plaintiff points to a single former employee (FE-5) without disputing that FE-5's vague March 2024 "video message" about staffing support issues (Compl. ¶74) is not even "alleged to have warned Defendants of anything to do with testing or quality assurance." (Mot. 29.) Nor does plaintiff dispute that FE-5 has no firsthand knowledge that Kurtz or Sentonas ever saw the supposed message. (Mot. 29-30.) *See, e.g.*, *Key Energy*, 166 F. Supp. 3d at 862 (rejecting CW allegations because "[t]here [were] no allegations that three of the . . . Defendants . . . had any communications with the CW[s]"); *Izadjoo*, 237 F. Supp. 3d at 517 (rejecting scienter where CW "[did] not state that he reported to the defendant [] officers").

Those deficiencies are not remedied by the hearsay statements of two former employees quoted in the *Semafor* article, because plaintiff does not dispute that "neither alleges that Kurtz or Sentonas *knew* of any testing or quality control issues." (Mot. 30-31.) Those allegations likewise do not plead scienter. *Key Energy*, 166 F. Supp. 3d at 862; *Izadjoo*, 237 F. Supp. 3d at 517.

## CONCLUSION

The Complaint should be dismissed in its entirety and with prejudice.

17

Dated: July 3, 2025

Respectfully submitted,

_____

Mark C. Holscher, P.C. (*pro hac vice*)
Austin Norris, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
Email:  mark.holscher@kirkland.com
        austin.norris@kirkland.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
Kevin M. Neylan, Jr. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
Facsimile: (212) 446-4900
Email:  sandra.goldstein@kirkland.com
        kevin.neylan@kirkland.com

Steven J. Wingard (State Bar No. 00788694)
Santosh Aravind (State Bar No. 24095052)
Robert "Robby" Earle (State Bar No. 24124566)
SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX  78701
Telephone: (512) 495 6300
Facsimile: (512) 495 6399
Email:  swingard@scottdoug.com
        saravind@scottdoug.com
        rearle@scottdoug.com

*Counsel for Defendants*

18

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on July 3, 2025 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_____

Mark C. Holscher, P.C.